Helms, Appellant, v. Zeitzeff, Appellant.

Argued May 1, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Philip B. Driver, Jr.,* with him *George S. Saulnier, Ronald C. Unterberger,* and *Lindenmuth, Class & Saulnier,* and *Harper, George, Buchanan & Driver,* for plaintiff.

*Albert Blumberg,* with him *McClenachan, Blumberg & Levy,* for defendants.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1962:

Prior to 1924, a small creek known as Lamokin Run babbled its way through Chester in Delaware County, crossing over a road known as Ninth Street and pursuing its course over other lands until it joined the parent waters of the Delaware River. In 1924, the City of Chester made some improvements on Ninth

Street and, in doing so, lowered the course of Lamokin Run so that it flowed through a culvert beneath the thoroughfare.

E. R. Helms, owner of the property adjoining Ninth Street on the south side, laid pipes subterraneously to connect up with the city culvert and thus guide the creek through his land to the land south of his property. The owner of this lower property, S. R. Crothers, sank large domestic hot water boilers (with their ends knocked out) into the bed of the Lamokin Run to assist the creek on its way to the river. After sinking the pipes, he covered them with earth. From time to time dumped fill was poured over the pipes on both properties and eventually the pipes were no longer visible from the surface, which had now risen from 7 to 24 feet above the original level.

Since the hot water boilers had not been sealed together at the joints, all did not go well with the flow of the underground Lamokin Run, and finally came the day when the water no longer wended its way to the Delaware. Failing to locate an outlet, it backed up on to the Helms property, flooding basements and doing other damage.

In May, 1953, Paul E. Helms, who was now owner of the upper property, filed a complaint in equity in the Court of Common Pleas of Delaware County against Joseph Zeitzeff trustee under the will of Rebecca Zeitzeff, former owner of the subservient property, and Morris Zeitzeff, life beneficiary under the trust. On February 3, 1960, by stipulation between the parties, Joseph Zeitzeff, Abe Zeitzeff, Edith Nemiroff and Roseanne Sterman were substituted for the original defendant, Joseph Zeitzeff, trustee under the will of Rebecca Zeitzeff.

Hearings were held before Chancellor DIGGINS on June 16, 1954, June 12, 1957, June 11, 1958 and December 17, 1959. Following the hearing of June 12,

1957, the City of Chester, at the direction of the court, was brought in as a party defendant and participated in the latter two hearings. On January 27, 1961, the chancellor entered a decree nisi, amended on February 9, 1961. After exceptions taken and argued, the court handed down a final decree on September 27, 1961, ordering the construction through the Zeitzeff property of a pipe of reinforced cement 18 inches in diameter to carry off the waters coming from the Helms property, the project not to exceed an expenditure of $3500, which was to be divided equally between the parties. Both parties appealed, Helms complaining because he was ordered to pay one-half of the expense of the decreed project and not allowed damages for the losses he suffered as a result of the backing-up of Lamokin Run. The Zeitzeffs complained that they were not at fault in any regard and that the Helms had no standing in equity because of laches.

The law is well settled that the owner of land through or over which a natural watercourse flows may not obstruct the stream so as to damage the land higher up on the stream. One buys land as it is and he knows that rivers, creeks and tributaries are destined by natural laws to move toward larger bodies of water. There is in each moving stream an irresistible force which cannot be stopped or harnessed without in some way affecting the land which it touches. Thus, the owner of land on the higher level of a stream has the right to have that stream move away from him and every subservient owner has the obligation to let it continue on its way. In *Colket v. Verner*, 236 Pa. 285, 291, this Court approved the following pronouncement of law on the subject: "As against a lower riparian owner, the owner of the lands higher up the stream has the right to have the waters of the stream flow over his lands as they would naturally flow. The lower owner has no right to obstruct the flow of the stream

by a dam so as to flood the land of the upper owner, or to raise the level of the water in its bed to his detriment."

What the subservient owner may not do through intention he may equally not accomplish through neglect. The evidence in this case demonstrates that the Zeitzeffs from the beginning of the problem presented by the Lamokin Run treated it haphazardly. The owner at the time, as already stated, planted a few boiler pipes in his land, but did not seal them together. Later earth was piled high over the pipes. Inevitably some of it was bound to enter the mouths of the pipes and clog them. Failing to get through to the Delaware, Lamokin Run returned to the Helms land, its irresistible force unspent, its dynamic urge unabated. This the Zeitzeffs had to know.

As a result of this improvident flooding of the land of the plaintiff, he claims he has been unable to rent his commercial building which would have brought him a return of $2,100 per year and that, in addition, the building was damaged to such an extent that it depreciated in value $15,000. He claims in all $40,200 in damages.

This question of damages will be considered later, but the defendants cannot possibly maintain that they were unfamiliar with the difficulties they inflicted upon Helms through their indifference to the legal obligation which was theirs to allow Lamokin Run to pass through or over their land unimpededly. The defendants assert that they did not know of the events which converted Lamokin Run from a surface stream into an underground piped conduit. In his 22nd finding of fact, the chancellor states: "Plaintiff complained to the defendants' predecessor in title in *1937* concerning the condition about which he now complains." (Emphasis supplied)

In 1948 the water from the regurgitating creek rose above the plaintiff's basement floor. He obtained some relief from this condition by "rodding" the defendants' underground pipes. In 1950 the water again regurgitated, but this time the condition could not be relieved because the defendants' pipes had apparently crumbled or become so disaligned that rodding was impossible. The plaintiff informed the defendants of this situation.

Although the law appertaining to this case is clear, the pertinent facts had been muddled as the Lamokin Run in hit-and-miss fashion flooded, backed up, and ran over, through and under the Helms and Zeitzeff properties. Addressing himself to this situation the chancellor said: "Further, it appeared from the record at that time that to correct the condition across the defendant's property would merely create the same problem between the defendant and his nearest subservient tenement and therefore the Chancellor directed that the City of Chester be made a party defendant. This was done and the City of Chester, although contending that it should not be a party defendant, did make an exhaustive engineering study and as a result thereof discovered that there was a sewer which connected with the city system in the unopened bed of Eighth Street, which is the southern boundary of the defendant's property. This then solved the problem of where the water would go if carried across the defendant's property."

Following through on these disclosures, the chancellor arrived at a solution of the problems involved. The party litigants were fortunate in that the chancellor was personally "familiar with the area in question and with the parties to the suit." His adjudication evinces an intimate knowledge and a practicable applicable wisdom which, if followed, will allow Lamokin Run to flow unvexed to the Delaware and restore dry land to the plaintiffs and, to both parties,

an equanimity of feeling which has been dampened through the many years of neighborly strife and controversy.

We will not go into the facts in any greater detail than already discussed since the adjudication covers the entire subject with historical, geographical and engineering completeness.

On the subject of laches we have this to say. We are not satisfied that the plaintiff is barred from the relief he seeks because of sloth in initiating his action. While he was aware for a long time of the condition which eventually took him into court, he had tried through his own physical efforts, and through protests, to effectuate a non-litigating conclusion to the dilemma produced by the ceaseless movement of the Lamokin Run waters. Even so, it is not certain, nor was it to the chancellor, that Helms moved with that promptitude which would have, a long time ago, brought an end to the slippery situation which began to show signs of litigable eventualities as far back as 1937. Since this is an equity action, the chancellor properly held that while the plaintiff's delay in getting court action started was not so culpable as to keep him out of court, it was still enough to deprive him of the damages he claims, which perhaps, in any event, are over-stated. We, therefore, affirm what the lower court said in this respect, namely, "We agree with the Chancellor that no award of damages should here be made first because we feel the claim on the evidence is exaggerated, and secondly, while we do not hold the plaintiff guilty of laches so far as his right to relief from the presently existing condition is concerned, we do feel that his right to damages, if any, has been lost by his failure to vigorously press the action to a conclusion, not only in the years when the trouble was developing, but since the case was started in 1953. . ."

While affirming all that the lower court has excellently done in this case, we cannot agree that the expenditure involved in constructing the drainage system it has ordered should be divided equally between the parties. We are satisfied from the record that this expenditure should be borne wholly by the defendants.

The decree of the court below, therefore, is affirmed except in the feature just mentioned, namely, that the cost of installing the drainage system, up to the total amount of $3500 shall be paid by the defendants alone.

Each party will pay its own costs involved in this appeal.